Okay, I see everyone's here and now here 21-3054 Mojo Built versus City of Prairie Village. Mr. Patterson, you may proceed. Thank you. I represent the Blanketh and Eamston case Mojo Built. You're not coming through real clearly. Can you? Let me try to speak louder. Thank you. Okay. May it please the court. I believe we have here a very interesting precedential making opportunity based upon the fact that we in filing a class of one action have an extremely high bar and that's admitted. When you make a class of one equal protection argument, you must allege that you have been intentionally treated differently than a comparable situation, factual situation, and that there's no rational basis for the distinction. Now, the district court cited a number of cases that so hold. There were a number of cases before the Supreme Court made a decision in Willowbrook versus Olick, but Olick confirms that a class of one without the aid of any protected class that might be available, that if certain allegations are made concerning what appeared to be an intentional distinction made and that there was no rational basis for that, then a claim is made and a claim is fled. Now, Justice Brower was concerned, maybe the perception was concerned exactly about the situation we're here now. We don't want federal courts to become zoning board courts of appeal. That's not what we have here. What we have is a situation where the district court ruled that a self-comparison class of one is not maintained. In other words, in the instant case, Mojo owned a property, it's called 7540. It's about 300 feet north of two properties it had. It received in 2018 zoning approval under very objective zoning ordinances and a lot split to build two houses. 300 feet south on the same road, substantially identical and for all material purposes identical, Mojo applied to Prairie Village for likewise the same type of zoning, same type of lot split under facts that are as pled substantially identical and was denied. The only difference, there was no change in the ordinances that were not your typical zoning ordinances that require plans to be approved and subjective decisions made. If you met the side yard setbacks, front yard setbacks, lot width, height of building, then you would qualify for a rezoning from, in this case, R1A to R1B as was done in the 2018 case. Now, we were denied, Mojo was denied the two properties across the street from each other, 200 feet south of 7540. Therefore, we appealed to the district court. Judge Teeter made the distinction, and we get it, of a class of one plaintiff making an allegation which would go like this, you treated that guy differently than me under the same factual situations. That is, the plaintiff comparing themselves to another person treated differently under identical situations. That would be a class of one claim when the distinction was intentionally made without any reasonable basis. Now, here we have Mojo comparing itself as the developer of 7540 to its case of 7631 and 7632. The only distinction between what would be a valid class of one claim is the fact that Mojo was the same party in the comparable property. So, it would appear that the district court is saying that the decision on the ability to maintain a class of one case on a property matter turns exclusively on whether or not another person owns the comparable property or Mojo owns it. As I read the district court's decision on 7540 and 7632, the class of one claim, which Judge Teeter would say is not properly pled and is not a cause of action, turns exclusively on the fact that another builder didn't do 7540. So, rather, it was Mojo. Therefore, in comparing what the city did on 7540 to 7631, we can't maintain that claim because ABC builder didn't do 7540. You did. Mojo did. Don't you think that's a pretty good distinction? Isn't the purpose of equal protection to prevent the offensive governmental action of treating different people differently? That's it. We're trying to be a society where all people are treated equal. Are treated as equal. And if you're treated worse than in the past, that doesn't seem to fit in very well with the concept or the language. Deny a person equal protection of the law. Well, let me respond to that. Equal protection protects people from unequal consideration by state action. That's what we have here. The state has treated Mojo differently in one setting than it did the other. Mojo has been denied equal protection because of a distinction made without the difference of 7540 compared to 7631. Then that's not a person being treated differently, that's a piece of property being treated differently the way you just described it. But the impact is on Mojo. Mojo is the one damaged as a result of the distinction made without justification and has suffered damages as a result of that. Now, I suggest that this is a case of first impression. Mr. Patterson, is this a case of anywhere that has acknowledged the theory on which you're proceeding today? We have looked and we can find it. Now, I know the district court referred to Cruther versus Bentley, which is an employment case. And it was a self-comparison case, but the court in Cruther versus Bentley, an Alabama case, said that because of the distinction in facts and circumstances regarding the plaintiff standing in one conservatorship case versus another conservatorship case where he self-compared, that those situations were different. But the Cruther versus Bentley case wrote, the court finds no support in case law and Cruther and Curriff cites no case law where a party can hold himself out as a comparator. So in Curriff versus Bentley, the court wrote, we can't find a case of a self-comparator type of class of one client. Likewise, in the case of Snyder versus Garnett, which again was a self-comparison case where an owner compared how the city treated him 13 years prior to the complaint he brought now, which were not similar in circumstance, the court wrote that Snyder, the plaintiff in that case, cites no case suggesting, let alone clearly establishing that you can be a self-comparator. And likewise, the court wrote in Snyder versus Garnett, the Supreme Court and this court have always described equal protection claims and they could not find, it says contrary, they could not find a case that involved a self-comparison class of one claim. We have not been able to find it. I truly believe a self-comparison class of one equal protection claim denies the claimant, in this case, Mojo, equal protection under the law because the court treated Mojo differently on one property versus another property in all material respects identical without justification and intention itself. I believe that... But let's say you can, I think it's pretty clearly that what the provision, equal protection provision provides is that you can't treat two people differently. Now, maybe you could say the two people are the same person at different times, but how is your client different at these two times? If he was differently, I mean, to treat the same person differently is different from treating people differently because of a difference that is inappropriate to consider. Are you alleging your client changed in any important respect in that period? No, no, no. It's just the property. It's just, your claim boils down to two pieces of property being treated differently. But in due respect, the 14th Amendment doesn't say, no persons shall be denied equal protection. It says, no person shall be denied equal protection. Yeah, but a piece of property, you're not saying a piece of property is a person, but that's your argument. The only difference in the two cases is the property. The two pieces of property are treated differently. Right. That doesn't sound like two persons are treated differently. Well, again, respectfully, I would urge the court that it's not the persons involved, but it's really the subject matter of the claim and the damage caused by the state action. It should make no difference. I mean, it should make no difference that ABC Builder owned 7540 and Mojo relied upon the city's decision on 7540 to try to seek zoning on the properties 300 feet south. I truly think that the comparison of the properties and how Mojo was treated in all three of them are a distinction made by the city without any justifiable distinguishing characteristics at all, and therefore that one party may claim that. And in fact, I'm not certain that was the ruling of Judge Peter, but her claim was that her opinion says that the courts have also outright rejected self-comparison, but under Bentley and Snyder, they don't say that. They just say we can't find any cases on it. So Judge Rossman, I do believe this is a case of first impression. What if I have, you know, my property is valued by the county assessor at, say, $50 a square foot, and next year, Oklahoma County elects a different county assessor, and he or she says, boy, the last county assessor was too generous. Bob Bacarach's property should be assessed at $75 a square foot. In the interim 12 months, there have been no purchasers or sales. So theoretically, there are no comparable transactions, so the market value could not possibly have changed, and the parties stipulate to that. Do I have an equal protection violation because the Bob Bacarach of 2021 had the benefit of paying less property taxes based on a lower valuation than the property Well, there is a Supreme Court case on that, and if the county used a uniform method of valuation throughout and changed the value of your property up to $75,000 as it applied to all other properties, you would not have a claim. But as is done so many times, wink, wink, nod, nod, when the property sells, the value goes up. Otherwise, the properties are valued on a uniform basis throughout. I don't think you would have a claim if your property went up to $75, so long as a uniform system of valuation is established by the county throughout. Thank you, Mr. Peterson. Your time has expired. Thank you. Mr. Seck, do you have anything you would like to add? Yes, I would, Your Honor. Thank you. To answer Judge Rossman's earlier question, this is not a case of first impression. I think when you read Snyder and Caruth, the courts both rejected the idea of self-comparison. It goes back to the Olick case. And as the court said in Snyder, the requirement must be enforced with particular rigor in land-use context, and that's what we have here. In Kansas, when a governing body is making decisions on a particular piece of property, it's a quasi-judicial decision. And in this case, between the first 2018 application and the application in 2020, we had a significant change in City Council, and there was guidance given back to the Planning Commission in the 2020 application to take a broader approach to a view of this application. Here, it's dangerous to allow a self-comparison, particularly in a land-use case. As Snyder pointed out, as well as Caruth, you are going to have changes in government bodies. You are going to have changes in periods of time of the attitude of the citizens of the particular governmental entity. Here, you end up impairing the discretion of the governing body if you allow self-comparison. The governing body has to make certain decisions at certain periods of time as to what is the best decision for the broader good of the community. Here, we simply cannot allow a self-comparison for those reasons. You simply cannot allow a self-comparison because you always will have factors within a quasi-judicial process that create a distinction between one application and another. One thing you mentioned was that there was a change in city government, or at least in this agency. This is a motion to dismiss, was it not? Wasn't it decided on a motion to dismiss? It was. It was pled in the amended complaint. Procedurally, what happened, Your Honor, is there was a complaint that contained additional information. When I filed a motion to dismiss, Mr. Patterson filed an amended complaint that changed the factual scenario. Judge Teeter has used the amended complaint for my renewed motion to dismiss. Within that amended complaint, there was an allegation that the city council and the mayor had changed in between. There was also a specific allegation that said the remand by the city council of the application back to the planning commission, which in Kansas is only a guiding body, they remanded it to consider a more holistic approach to planning with public engagement and diversity in the housing stock. So all those facts are in the amended complaint that Judge Teeter had to work with at the time of my renewed motion for judgment on the pleadings. So I think all that's fair game for this court to consider. And as I said earlier, I think even a liberal reading of Caruth and to compare yourself to yourself for purposes of equal protection. That's not what that amendment was intended to. It's not the way it's been interpreted. And there is actually, as of yesterday when I checked, there's no court that has determined that you can compare yourself to another. Those are all the comments I have. I'm open for questions. Any questions for the panel? Well, thank you very much, Mr. Sick. Thank you, Your Honor. Cases submitted and counsel are excused.